834 So.2d 1141 (2002)
Dorothy M. GLAPION, individually and on Behalf of Her Minor Son, Matthew Glapion, and Diana Glapion, Djuana Glapion and Melvin Glapion, Jr.
v.
Dr. Gary BERGEAUX and XYZ Insurance Company.
No. 2001-CA-1865.
Court of Appeal of Louisiana, Fourth Circuit.
December 11, 2002.
*1142 Joseph W. Thomas, Law Offices of Joseph W. Thomas, New Orleans, LA, for Plaintiff/Appellee.
Bruce A. Cranner, Gary L. Hanes, Frilot, Partridge, Kohnke & Clements, L.C., *1143 New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, SR., Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR.).
STEVEN R. PLOTKIN, Judge.
The pivotal issue in this appeal of a judgment in a medical malpractice action is an evidentiary issue concerning the admissibility of evidence concerning the defendant physician's mental health history and a report issued by the Louisiana State Board of Medical Examiners ("Board"). Statutory intervenor, Louisiana Patients' Compensation Fund ("LPCF"), appeals a trial court judgment on a jury verdict awarding plaintiffs, Dorothy M. Glapion, individually and on behalf of her minor son, Matthew Glapion, and her major children, Diana Glapion, Djunna Glapion, and Melvin Glapion, Jr. (hereinafter referred to collectively as "the Glapions"), wrongful death and survivor damages arising out of the death of Melvin Glapion, Sr., resulting from the alleged medical malpractice of defendant, Dr. Gary Bergeaux. For the reasons explained below, we reverse the trial court judgment and remand the case for retrial.

FACTS
Dr. Bergeaux, who practiced internal medicine prior to his voluntary retirement in 1995, treated Mr. Glapion for hypertension and other medical issues from 1983 until his death on December 23, 1992. That morning, Mr. Glapion telephoned Dr. Bergeaux with certain complaints, as a result of which Dr. Bergeaux prescribed antibiotics, which Mr. Glapion started to take. Later in the day, Mr. Glapion collapsed at home and was rushed to Methodist Hospital, where he was pronounced dead shortly after his arrival. The cause of death was sudden total cardiac arrest.
The Glapions filed the instant medical malpractice suit against Dr. Bergeaux, claiming that Dr. Bergeaux negligently misdiagnosed Mr. Glapion's symptoms during the telephone call. Moreover, they claim that they relied on Dr. Bergeaux's advice when they decided not to take Mr. Glapion to the emergency room that morning. As a result of Dr. Bergeaux's alleged malpractice, the Glapions claim damages for destruction or decrease of "a significant chance that Mr. Glapion's death could have been avoided."
Prior to the original trial date, April 25, 2000, the plaintiffs settled with Dr. Bergeaux for $50,000, reserving their right to seek excess damages from the LPCF. Thereafter, the LPCF intervened in the action and defended the suit at trial. Because the Glapions settled with Dr. Bergeaux for less than $100,000, the LPCF was allowed to contest Dr. Bergeaux's liability for Mr. Glapion's death.
At an October 24, 2000, pre-trial conference, the case was reset for trial on April 23, 2001, with a cut-off date to complete discovery of March 9, 2001, 45 days prior to trial. On March 29, 2001, the Glapions submitted a Pre-Trial outline, listing three contested issues of fact and law: (1) the contents of the telephone conversation between Mr. Glapion and Dr. Bergeaux, (2) whether Dr. Bergeaux breached the applicable standard of care, and (3) the measure of damages due the Glapions. The Glapions also presented an exhibit list on that date. Significantly, Dr. Bergeaux's mental health history was not raised by the Glapions' pre-trial submissions.
Trial was then continued to July 9, 2001. Another pre-trial conference was held on April 5, 2001, at which time the trial judge re-opened discovery to allow the LPCF to *1144 depose Dr. Nicholas Pappas, the Glapions' expert witness, and to allow the Glapions' new counsel to re-depose Dr. Bergeaux.
At the redeposition of Dr. Bergeaux, held on June 7, 2001, the Glapions' new counsel attempted for the first time to raise a number of issues, including the status of Dr. Bergeaux's medical license at the time of his retirement in 1995 and other malpractice claims made against him. On advice of his counsel, Dr. Bergeaux refused to answer those questions. Thus, the Glapions filed a Motion to Compel Discovery, as well as a Notice of Records Deposition and request for subpoena duces tecum directed to Dr. Richard Richoux, seeking records relative to his psychiatric treatment of Dr. Bergeaux. The trial court granted the Motion to Compel Discovery, ordering Dr. Bergeaux to submit to another deposition and prohibiting Dr. Bergeaux's counsel from making objections during the deposition. During Dr. Bergeaux's third deposition, the Glapions' counsel referred to an opinion of the Board relative to Dr. Bergeaux's 1995 surrender of his medical license.
The LPCF filed a Motion in Limine, seeking an order prohibiting the Glapions from discovering or using evidence relative to Dr. Bergeaux's mental health and the Board's report, at least without laying a proper foundation. That motion was heard and denied the morning of trial. Prior to trial, Dr. Bergeaux had announced his intention to present the testimony of Dr. Richoux if the court permitted the Glapions to use his mental health history or the Board's report. However, the trial court excluded Dr. Richoux from testifying.
Following the trial, at which the Glapions placed particular emphasis on the evidence concerning Dr. Bergeaux's mental health history and the Board's report, the jury returned a verdict in favor of the Glapions, awarding $40,000 in survivor benefits, $675,000 in wrongful death damages to Mrs. Glapion, and $100,000 in wrongful death benefits to each of the Glapion children. These amounts were discounted pursuant to the statutory limitations set forth in the Medical Malpractice Act, LSA-R.S. 40:1299.41 et seq., and a credit was given for the amount of Dr. Bergeaux's settlement. Judgment was then entered pursuant to the jury verdict.
The LPCF appeals, assigning four errors: (1) the trial court improperly admitted evidence relative to Dr. Bergeaux's mental health and the status of his medical license at the time of his retirement in the absence of a proper foundation; (2) the trial court evidenced "a systematic and selective disregard of the court's own pretrial procedure," permitting the Glapions to expand issues and exhibit lists just prior to trial, but prohibiting the LPCF from responding to the new evidence; (3) the appellate record is woefully inadequate, necessitating the remand of this matter to the trial court for supplementation of the record; and (4) the jury improperly awarded survivor damages.

ADMISSIBILITY OF EVIDENCE
In its first assignment of error, the LPCF argues that the trial court improperly admitted evidence relative to Dr. Bergeaux's mental health history and the Board's report. Determination of the admissibility of evidence is generally governed by the following three-part test: (1) Is the evidence relevant to the issues before the court, as required by La. C.E. art. 402? (2) Does the evidence pass the "balancing test," established by La. C.E. art. 403? and (3) Do any of the exceptions established by La. C.E. art. 404(B) apply. In re Cerniglia v. French, 2000-2768, 2000-2769, p. 5 (La.App. 4 Cir. 4/3/02), 816 So.2d 319, 323.
*1145 Relevance of evidence
The first question that this court must answer in order to determine whether the trial court properly admitted the contested evidence in the instant case is whether the testimony was relevant. Id. La. C.E. art. 402 states as follows:
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible.
La. C.E. art. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
The LPCF argues that the contested evidence was inadmissible because the Glapions "utterly failed to come forward with a reasonable foundation of fact and expert opinion linking Dr. Bergeaux's condition and his treatment to his conduct in this case." Because the Glapions failed to establish the necessary foundation, the LPCF claims the evidence had "no rational connection to the issues the jury needed to decide." In fact, the LPCF points out, the Board's report was not prepared until several years after Mr. Glapion's death.
The Glapions counter by arguing that the evidence of Dr. Bergeaux's mental health history and the Board's report was relevant to the question of credibility. The Glapions point out that credibility was an important issue in this case because the content of the telephone conversation between Mr. Glapion and Dr. Bergeaux is the subject of an important factual dispute. Specifically, the Glapions claim that Mr. Glapion told Dr. Bergeaux that he was experiencing a number of physical symptoms, including nausea, and that his family was preparing to take him to the emergency room until Dr. Bergeaux told him that he didn't need to go. Dr. Bergeaux claims that Mr. Glapion did not tell him that he was nauseated, and that he told Mr. Glapion to go to the emergency room, but Mr. Glapion refused.
In support of their argument that the contested evidence was relevant to the issues in this case, the Glapions cite the Louisiana Supreme Court's decision in State v. Luckett, 327 So.2d 365 (La.1975) (on rehearing). In that case, the Supreme Court held that evidence of the defendant's marijuana use on the night of the alleged criminal action was relevant to the defendant's credibility. Id. The court stated, in pertinent part, as follows:
Various ways are recognized as proper to attack the credibility of a defendant who has testified to facts that occurred at the time of the offense. Thus, defects of capacity, sensory or mental, which would lessen the ability to perceive the facts which the witness purports to have observed, are provable to attack the credibility of the witness, either upon cross-examination or producing other witnesses to prove the defect. Clearly, a defect in capacity may result from the use of drugs or alcohol. Whether a witness was intoxicated, by use of drugs or alcohol, on the occasion respecting which he is called upon to testify goes to his credibility and weight of his evidence and not to his competency. See State v. Sejours, 113 La. 676, 37 So. 599 (1904).
Therefore, it was permissible for the state to cross-examine defendant as to his use of marijuana at the time of the alleged offense. It represented a proper attempt to attack his credibility which was crucial to the state's case. After receiving negative responses to the two or three questions asked by the prosecutor, *1146 the matter was pursued no further. Under the circumstances, we do not find that the questioning of defendant was inflammatory. Assignment of Error No. 3 is without merit.
Id. at 372-73.
The record evidence in this case reveals that Dr. Bergeaux has admitted that he has mental health problems, that he suffers from bipolar disorder, that he suffered from hallucinations at some points in time between 1990 and 1992, that his mental condition has rendered him incompetent to practice medicine at some points in time, and that he takes medication for those problems. As the Louisiana Supreme Court has found that information about mental conditions that might affect credibility is relevant to the issue of credibility, we find that the evidence regarding Dr. Bergeaux's mental health history, including the Board's report, was relevant, but only to the issue of Dr. Bergeaux's credibility.
The Glapions further argue that the Board's report is also relevant to the issue of whether Dr. Bergeaux's decision to prescribe an antibiotic to Mr. Glapion during the telephone call was appropriate. In support of this argument, the Glapions point out that the Board's report refers to charges concerning Dr. Bergeaux's improper prescribing of controlled substances. However, our review of the Board's report, especially its Findings of Fact, indicates that the Board's concerns regarding Dr. Bergeaux's prescribing of controlled substances related primarily to medications used to treat obesity, not his prescribing of antibiotics to a patient with whom he obviously had an on-going relationship, like Mr. Glapion. It is true, however, that the first charge against Dr. Bergeaux documented in the Board's report does generally reference improper prescribing of controlled substances, meaning that the Board's report might have some relevance to issues in this case beyond credibility.
Probative value vs. unfair prejudice
The second question that this court must answer in order to determine whether the trial court properly admitted the contested evidence in the instant case is whether the evidence is admissible under the balancing test established by La. C.E. art. 403, which requires the exclusion of even relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." In re Cerniglia, 2000-2768 at 7, 816 So.2d at 324. The LPCF argues that the evidence of Dr. Bergeaux's mental health history and the Board's report is more prejudicial than probative in the instant case. In support of this argument, the LPCF refers to the general populace's lack of understanding of mental illness and its treatment that "tends to translate into a level of unjustified aversion and mistrust toward the mental-health patient."
Our review of the record evidence in this case convinces us that the unfair prejudice that resulted from the evidence of Dr. Bergeaux's mental health history and the Board's report outweighed the probative value of that evidence, especially when the evidence is considered in context. A review of the transcript indicates that the Glapions' attorney use of the contested evidence far exceeded its relevance to the issue of Dr. Bergeaux's credibility. As noted above, the LPCF had filed a motion in limine seeking the exclusion of the evidence of Dr. Bergeaux's mental health history and the Board's report. The trial judge denied that motion, ruling that the contested evidence could be used.
However, in addition to using the contested evidence for impeachment and for *1147 other purposes related to Dr. Bergeaux's credibility, the trial judge allowed the Glapions to use Dr. Bergeaux's mental health history and the Board's report to completely discredit Dr. Bergeaux as its primary trial tactic. When Dr. Bergeaux took the stand, the very first question the Glapions' attorney asked was "Before we get too far field [sic], did you take your medication this morning?" Then, apparently not satisfied with Dr. Bergeaux's affirmative response, the Glapions' attorney asked as the second and third questions, "You took your lithium?" and "You took your Zoloft?" Dr. Bergeaux answered "Yes" to both questions. As the questioning of Dr. Bergeaux progressed, many of the questions asked by the Glapions' attorney were based on Dr. Bergeaux's previous deposition. When the attorney perceived that Dr. Bergeaux's answers failed to conform exactly to his former statements, he repeatedly asked Dr. Bergeaux questions relative to whether he was lying or had been lying at the time of the deposition. Further questioning then revealed that the minor differences in some of Dr. Bergeaux's answers that were highlighted by the Glapions' attorney were caused by a difference in semantics, or differences of opinion, not true previous inconsistent statements by Dr. Bergeaux. The attorney's questions were designed to establish that Dr. Bergeaux was unreliable, at least in part, because of his mental health history and/or because of his need for medication to control a medical problem. The trial court also admitted the Board's report without explanation or redaction, allowing the jury to infer that Dr. Bergeaux had violated criminal laws and medical standards at a time and place unconnected to the incident in question. Thus, the Glapions were allowed to highlight Dr. Bergeaux's mental health history and the Board's report for purposes unrelated to the events of December 23, 1992 or to any other issue in the case. The trial court consistently overruled the LPCF's objections to the myriad of inappropriate questions asked by the Glapions' attorney.
Although we have found above that the evidence of Dr. Bergeaux's mental health history and the Board's report was relevant to the issue of Dr. Bergeaux's credibility as it was related to the content of the telephone conversation between Dr. Bergeaux and Mr. Glapion on December 23, 1992, the evidence was clearly prejudicial to the LPCF's case. In fact, little if any of the use of the evidence by the Glapions was related to the only issue for which it was relevanti.e., Dr. Bergeaux's credibility. Thus, the contested evidence was misused in a way that created unfair prejudice that clearly outweighed probative value of the evidence to the issues in the case. Accordingly, we find that use of the evidence did not pass the "balancing test" established by La. C.E. art. 403. The trial court therefore improperly admitted the evidence of Dr. Bergeaux's mental health history and the Board's report.
La. C.E. art. 404(B) exceptions
The third question that this court must answer in order to determine whether the trial court properly admitted the contested evidence in the instant case is whether the contested evidence was admissible under the exceptions established by La. C.E. art. 404(B), which provides as follows:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, *1148 the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In the instant case, the Glapions have not argued that the contested evidence was admissible for any purpose except to prove Dr. Bergeaux's lack of credibility. Thus, the exceptions established by La. C.E. art. 404(B) do not impact the admissibility of the evidence in this case.

EXCLUSION OF DR. RICHOUX'S TESTIMONY
In its second assignment of error, the LPCF claims that the trial court's improper decision to admit the prejudicial evidence concerning Dr. Bergeaux's mental health history and the Board's report was made even more onerous by its exclusion of Dr. Richoux's testimony. That testimony was "relevant and competent ... to demonstrate that Dr. Bergeaux's mental condition had absolutely no effect on the facts of this case," the LPCF claims. According to Dr. Richoux's affidavit, Dr. Bergeaux's mental condition "had no effect on his medical judgment" on the date of Mr. Glapion's death in December of 1992. Dr. Richoux also stated that Dr. Bergeaux's condition did not affect his ability to understand and properly perceive reality, or his ability to tell the truth. Dr. Richoux clearly indicated in his affidavit that Dr. Bergeaux's condition was fully stabilized in December of 1992 and did not have an impact on his medical judgment or his personal competency at that time.
However, the gravamen of the LPCF's argument on this issue is the trial court's alleged "one-sided disregard of the pretrial order prepared by the parties and accepted by the court to favor the plaintiffs," which, the LPCF claims, "served to create manifest prejudice toward Dr. Bergeaux" and the LPCF. In fact, the LPCF claims that the trial court's conduct was so prejudicial as to deprive it of a fair trial. The LPCF emphasizes the fact that the discovery deadline for the original trial had already passed before the Glapions ever raised the issue of Dr. Bergeaux's mental health or the status of his medical license at the time of his retirement.
In response, the Glapions note that the trial court has vast discretion concerning the admission and exclusion of evidence. Further, they argue that the trial court properly modified the pre-trial order to prevent manifest injustice in this case. Concerning the exclusion of Dr. Richoux's testimony, the Glapions argue simply that Dr. Bergeaux admitted the salient facts regarding his mental health condition and that Dr. Richoux's testimony could not have affected those admissions. Specifically, the Glapions claim that Dr. Bergeaux admitted that he "was laboring with mental problems at the time of Mr. Glapion's death and experienced hallucinations about that time." The LPCF fails to explain how Dr. Richoux's testimony could have substantially affected the evidence, the Glapions claim.
The same three-part test applied above to determine the admissibility of the evidence concerning Dr. Bergeaux's mental health history and the Board's report applies to the question of whether the trial court properly excluded the testimony of Dr. Richoux in this case. Thus, this court must ask the following questions: (1) Is the evidence relevant to the issues before the court, as required by La. C.E. art. 402? (2) Does the evidence pass the "balancing test," established by La. C.E. art. 403? and (3) Do any of the exceptions established by *1149 La. C.E. art. 404(B) apply. In re Cerniglia, 2000-2768 at 5, 816 So.2d at 323.
It is axiomatic that Dr. Richoux's testimony concerning Dr. Bergeaux's mental health condition at the time of Mr. Glapion's death is at least as relevant to the question of Dr. Bergeaux's credibility as was his general mental health history and the Board's report introduced by the Glapions. Moreover, that information was not prejudicial to the Glapions' case in the manner that the evidence of Dr. Bergeaux's mental health history and the Board's report was prejudicial to the LPCF. Thus, we find that the trial court improperly excluded Dr. Richoux's rebuttal testimony.
The Glapions argue that the trial court properly excluded Dr. Richoux's testimony because Dr. Bergeaux failed to list Dr. Richoux as a witness in violation of the pre-trial order. However, the Glapions had not even raised the issue of Dr. Bergeaux's mental health history or the Board's report when Dr. Bergeaux filed his witness list. Moreover, the trial court allowed the Glapions to modify the pre-trial order to raise the issue of Dr. Bergeaux's mental health history and the Board's report. Thus, the trial court allowed one party to modify the pre-trial order, while denying the other party the same right. Furthermore, despite the fact that the admission of evidence is largely within the discretion of the trial judge, this court has recognized that a party has the right to present rebuttal evidence. Board of Commissioners of New Orleans Exhibition Hall Authority v. Missouri Pacific Railroad Co., 625 So.2d 1070, 1081 (La. App. 4 Cir.1993). Thus, we find that the trial court improperly excluded Dr. Richoux's rebuttal testimony.

STATUS OF THE RECORD
In its third assignment of error, the LPCF claims that the appellate record in this case is "prejudicially inadequate in several clear and compelling particulars." First, the LPCF claims that the Glapions failed to submit Dr. Bergeaux's pre-trial depositions into evidence, despite the fact they relied on and quoted these depositions in their examination of Dr. Bergeaux. Because the depositions are not in the record, the LPCF claims that it "is unable to even craft an argument relative to the improper nature of plaintiffs' attempts to impeach Dr. Bergeaux with the transcripts." Second, the LPCF claims that Dr. Richoux's proffered testimony was not recorded by the court reporter. Obviously, the absence of important portions of the trial court record makes it impossible for this court to fully review the judgment in favor of the Glapions.

REMAND
In In re Cerniglia, 2000-2768, 816 So.2d 319 (La.App. 4 Cir. 4/3/02), which also involved improperly admitted evidence, this court discussed the circumstances under which remand of a case to the trial court is appropriate:
This court has recently stated as follows in Estate of Cristadoro ex rel. Jones v. Gold-Kist, Inc., XXXX-XXXX (La.App. 4 Cir. 1/23/02), [819] So.2d [1034], 2002 WL 124394:
Generally, where a jury verdict is tainted due to a material error at trial, making it untrustworthy, then the verdict must be overturned; however, when an otherwise complete trial record exists, the general rule is that an appellate court should, if it can, render judgment on the record. Jones v. Black, 95-2530 (La.6/28/96), 676 So.2d 1067, citing Gonzales v. Xerox, 320 So.2d 163, 165 (La.1975). See also, Lawson v. Straus, 98-2096 p. 6 (La.

*1150 App. 4 Cir. 12/8/99), 750 So.2d 234, 239. Only when a view of the witnesses is essential to a fair resolution of conflicting evidence should the case be remanded for a new trial. Jones v. Black, at p. 1, 676 So.2d at 1067, citing Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980). See also, Wilson v. PNS Stores, Inc., 98-1004, p. 14 (La.App. 4 Cir. 12/16/98), 725 So.2d 66, 73-74, where the case was remanded for a new trial because the credibility of the witnesses was found to be of critical importance. "With the conflicting testimony ... [on a pivotal issue] this court finds it impossible to measure the effects of the trial court's persistent focus on [defendant's] apparent deviation from written policy excerpts." Because the employment discrimination claim at issue in the Wilson case turned upon proof by indirect evidence and by the inferences derived from the conflicting testimony of the parties, a remand for a new trial is required in the interest of justice.
Id. at 14, [819] So.2d at [1050-51] (emphasis in original). Likewise, in Wilson, cited by Cristadoro, this court stated as follows:
Under most circumstances, when an appellate court reverses a jury verdict and the record is complete, an independent review is conducted and judgment is rendered on the merits. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). It has been recognized, however, that in some cases, "the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial." Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707, 708 (La.1980). 98-1004 at 14; 725 So.2d at 73.
Following our close review of the record in the instant case, we find that this is one of those rare cases where "the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues." Id.

2000-2768 at 10, 816 So.2d at 326.
In the instant case, not only is "the weight of the [record] evidence [excluding the improperly admitted evidence] so nearly equal that a firsthand view of the witnesses is essential to a fair resolution of the issues," but the record is itself incomplete. Essentially, the case boils down to a contest between the Glapions and Dr. Bergeaux concerning the contents of the telephone conversation, as well as the appropriateness of Dr. Bergeaux's actions in response to the information Mr. Glapion gave him. Dr. Bergeaux is the only living participant in that telephone conversation, so his credibility on the issue of the telephone call is pivotal to a decision in this case. However, the fact that Dr. Bergeaux's credibility is an issue does not give the Glapions license to present all manner of prejudicial evidence against Dr. Bergeaux. Dr. Bergeaux's mental health problem is not per se evidence that Dr. Bergeaux acted inappropriately in response to Mr. Glapion's December 23, 1992 telephone call. Neither is his mental health condition per se evidence that Dr. Bergeaux lacks credibility or is unworthy of belief.
Further, the trial court's decision to allow the jury to view the Board's report in this case without redaction, explanation, or rebuttal resulted in such obvious prejudice to Dr. Bergeaux and the LPCF that a jury cannot be presumed to have made its decision on appropriate grounds. The Board's *1151 report specifically finds that Dr. Bergeaux violated Board rules and that he suffers from bipolar disorder that has made him incompetent to practice medicine at some periods of time when he failed to consistently take his medication. However, the Board's report does not specify the periods of time when Dr. Bergeaux failed to take his medication properly and certainly does not establish that Dr. Bergeaux was incompetent to practice medicine on December 23, 1992, when the telephone call occurred. Allowing the jury to review the Board's report without redaction or explanation, and especially without allowing rebuttal testimony, gave rise to the inference that Dr. Bergeaux had violated criminal laws and medical standards at a time and place unconnected to the incident at question in the instant case. Accordingly, we find that the record in this case is so tainted by trial court errors that reversal and remand for new trial is demanded.

CONCLUSION
For the reasons stated above, the trial court judgment in favor of the Glapions is reversed and the case is remanded for retrial.
REVERSED AND REMANDED.
ARMSTRONG, J., dissents.
ARMSTRONG, J., dissents.
I respectfully dissent. The plaintiffs' evidence of Dr. Bergeaux's mental impairment was properly admitted. I would affirm the judgment of the trial court.